IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| STEVEN D. PACHAL, an individual, | CV 20–50–M–DLC |
| Plaintiff, | |
| vs. | |
| SANDRA E. BUGREEFF, an individual, | ORDER |
| Defendant. | |

Before the Court is Defendant Sandra E. Bugreeff's Motion to Dismiss or Stay. (Doc. 14.) For the following reasons, the Motion is denied.

## BACKGROUND

Plaintiff Steven Pachal is a Canadian citizen. (Doc. 1 at 4.) Sometime prior to October 2011, Pachal and Bugreeff, a U.S. citizen, became engaged. (*Id.*) For Pachal to obtain residency, Bugreeff signed a U.S. Citizenship and Immigration Services Form I-864EZ which committed her to ensuring that Pachal's income be maintained at or above 125% of the federal poverty level. (*Id.* at 8.) This requirement of sponsoring citizens ensures that immigrants do not become a "public charge." (*Id.*) This is a life-long commitment, unless a specific "terminating event" occurs.[1] (*Id.* at 13.) Pachal and Bugreeff also signed a

---

[1] Under federal law, a Form I-864 "remains enforceable until the sponsored immigrant: (1) becomes a citizen of the United States; (2) has worked or can be credited with 40 qualifying quarters of work under title II of the Social Security Act; (3) ceases to be a lawful permanent

prenuptial agreement which specified that neither party was entitled to alimony in the event of divorce. (Doc. 23 at 6.)

On December 22, 2016, Bugreeff filed for divorce in state court. (*Id.* at 8.) Then, on September 20, 2018, she amended her petition for legal separation. (*Id.*) On November 20, 2018, upon motion, Pachal was ordered to leave their home. (*Id.* at 9.) Shortly after, he filed a motion for temporary alimony. (*Id.*) The state court divorce proceedings are ongoing. (*See id.*) On April 24, 2020, Pachal filed this action in federal court to enforce Bugreeff's obligation under the I-864EZ form.

## LEGAL STANDARD

Under Rule 12(b)(6), "[a] complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). In resolving the motion, a court takes the well-pleaded factual allegations as true and draw inferences in the plaintiff's favor. *Id.* A court may consider only the allegations in the complaint, documents attached to the complaint, or documents on which the plaintiff's case relies, "the authenticity of which is not contested," even if submitted by the

---

resident and departs the United States; (4) obtains in a removal proceeding a grant of adjustment of status as relief from removal; or (5) dies." *Golipour v. Moghaddam*, 438 F. Supp. 3d 1290, 1297 (D. Utah 2020) (citing 8 C.F.R. § 213a.2(e)(2)(i), 8 U.S.C. § 1183a(a)(2)-(3)).

defendant.[2] *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) *supersceded on nonrelevant grounds as recognized by Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1158 (9th Cir. 2019).

## DISCUSSION

Bugreeff moves to dismiss or stay this case arguing that both the *Younger* and *Colorado River* abstention doctrines caution against the Court's exercise of jurisdiction. (Doc. 15 at 7.) Pachal opposes both arguments. (Doc. 23.) At the outset, the Court will note that jurisdiction is not in dispute. Both parties acknowledge that the Court may exercise federal question jurisdiction as Pachal seeks to enforce an obligation that arises under federal immigration law. (Docs. 1 at 3; 15 at 11.) Instead, *Younger* and *Colorado River* are prudential doctrines that generally guard against federal interreference with state court affairs. *See Hanover Ins. Co. v. Fremont Bank*, 68 F. Supp. 3d 1085, 1106 (N.D. Cal. 2014). Although a motion to dismiss under Rule 12(b)(6) is an imperfect vehicle for considering these arguments, courts routinely address *Younger* and *Colorado River* using the framework provided by that rule.[3] *See id.*

---

[2] Bugreeff requests the Court take judicial notice of several state court documents. (Doc. 15 at 8.) The Court need not do so to consider them. These documents fall into this final category of documents with unquestioned authenticity on which this case relies.

[3] Pachal asserts the motion is untimely but asks the Court to overlook this "defect" in order to reach the merits. (Doc. 23 at 13–14.) The Court reaches no conclusion of the motion's timeliness, and will, as the parties both request, review the motion on the merits.

### I. *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court announced that federal courts should not interfere with ongoing state criminal proceedings as a matter of "equity, comity, and federalism." *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008) (hereinafter "*San Jose*"). This doctrine has been extended to apply to civil proceedings for damages as well. *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc). Under *Younger*, a federal court must abstain its exercise of jurisdiction when four requirements are met: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *San Jose*, 546 F.3d at 1092. The *Younger* doctrine is mandatory; when all four requirements are met, a district court lacks discretion to hear the case. *Id.* (quoting *Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001) *overruled on other grounds by Gilbertson*, 381 F.3d 965).

The Court need only address the fourth and final element to conclude abstention is not appropriate under *Younger*. Resolution of Bugreeff's outstanding obligations under the I-864 form in federal court will not interfere with the state

court proceedings. Here, Pachal requests arrearages from November 2018 to May 2020 (the time at which Bugreeff began making a monthly payment of $1,300 to Pachal) and a commitment to future payments, as needed, until the occurrence of one of the terminating events. (Docs. 1 at 19; 15 at 5–5.) Pachal does not request an injunction of the state court matter or any other form of relief that would have the practical effect of holding up that matter. Moreover, Bugreeff's support obligations exist independently of the parties' marital status because the obligation for Bugreeff to maintain Pachal at 125% of the federal poverty level survives divorce. *See* supra n.1. And although the parties have discussed this ongoing obligation in the state court proceedings, Pachal did not allege a breach of contract claim in that litigation. In short, nothing this Court decides on the breach of contract issue will have any effect in delaying or postponing the parties' divorce. For this reason, *Younger* abstention is not appropriate.

## II. *Colorado River* Doctrine

Bugreeff next urges for the Court to stay the case under the so-called *Colorado River* doctrine. (Doc. 15 at 14.) "Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th

Cir. 2002) (internal quotation marks and citations omitted). This doctrine is a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* (internal quotation marks omitted).

In considering whether to stay a federal case, courts consider the following factors:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841–42 (9th Cir. 2017). Although the Court is skeptical that *Colorado River* even applies given that the state court action is not a "parallel proceeding," it will, out of an abundance of caution, engage in a factors analysis.

**A. Jurisdiction over res and the order the forums obtained jurisdiction**

The first factor—which court first obtained jurisdiction over any res—and the fourth factor—the order the forums obtained jurisdiction over the case—are related. The state court first assumed jurisdiction over the case. Indeed, that case began over three years ago, while this case is still at the pleadings phase of litigation. And while the state court is considering the disposition of the parties' property rights, there is no evidence to indicate that the state court has taken

jurisdiction over any property at the present time. This makes the first factor neutral, and the fourth factor weigh slightly in favor of dismissal or stay.

### B. Inconvenience of the federal forum

Both parties agree the second factor is neutral. (Docs. 15 at 16; 23 at 34.)

### C. Piecemeal litigation

The third factor, the desire to avoid piecemeal litigation, weighs in support of retaining jurisdiction. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Id.* at 842 (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). Here, there is no concern of piecemeal litigation as Pachal has not asserted a breach of contract claim premised on Bugreeff's I-864 obligations in the state court proceedings. (Doc. 23 at 34.) This factor weighs in favor of retaining jurisdiction.

### D. The rule of decision

The fifth factor asks a court to contemplate whether federal or state law supplies the rule of decision. Here, as the case is in federal court on federal question jurisdiction, the case involves only application of federal law. This factor supports retaining jurisdiction.

### E. Adequacy of state forum and parallelism of suits

The sixth factor inquires into both "'whether the state court proceedings can adequately protect the rights of the federal litigants' (the 'adequacy' factor) and 'whether the state court proceedings will resolve all issues before the federal court' (the 'parallelism' factor)." *Id.* at 845. Turning first to the question of adequacy, Pachal raises concern that the state court's interpretation of federal law will not be as favorable as this Court's. (Doc. 23 at 18–19, 37.) Pachal argues that Ninth Circuit law, to which this Court is bound to follow, is not necessarily binding on Montana state courts, which potentially harms his chances of a favorable outcome. (*See id.* at 18 (citing *Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016) (recognizing that a prenuptial agreement does not waive an immigrant's private right of action under an I-864 form)).) Although there is no reason to think the state court would ignore the Ninth Circuit's statements in *Erler*, the Court agrees there is, at least, reasonable ambiguity as to whether the state court would apply federal circuit law when not strictly bound to do so. *Charleston v. Allen*, 420 S.W.3d 134, 138 n.6 (Tex. App. 2012) (recognizing that a state court, when interpreting federal law, is only bound by its highest court and the United States Supreme Court); *Abela v. Gen. Motors Corp.*, 677 N.W.2d 325, 327 (Mich. 2004) ("Although lower federal court decisions may be persuasive, they are not binding on state courts.").

Turning to the question of parallelism, the state court litigation is hardly parallel. Again, not only has Pachal not raised a breach of contract claim in that litigation, the questions facing the state court encompass a broader set of issues including claims for maintenance, spousal support, attorney's fees, and the equitable division of the parties' assets and liabilities. (Doc. 15 at 6.) The litigation here is narrowly limited to relief under the immigration contract. Accordingly, this factor strongly supports retaining jurisdiction.

### F. Forum shopping

The next factor asks whether the plaintiff has improperly selected the federal forum. Forum shopping requires more than merely exercising one's right to the federal forum—it requires some indication that the plaintiff has selected the federal forum after experiencing detrimental results in state court. *See Seneca Ins. Co.*, 862 F.3d at 846. There is no indication of forum shopping here. After all, it was Bugreeff who initially filed for divorce in state court, and it was Pachal who filed in federal court. There is no indication that Pachal pursued this action in federal court due to any adverse rulings in state court. This factor supports retaining jurisdiction.

### G. Whether the state court proceedings will resolve all federal issues

Finally, the eighth factor also supports the Court's keeping the case. The state court litigation will not necessarily resolve all federal issues where Pachal has

not plead his federal claims in that litigation. Although there is no evidence that he is barred from doing so, the deadline to amend the pleadings without leave of court has passed, Mont. R. Civ. Pro. 15(a)(1)(A), and there is, at least, a question as to whether the court would allow Pachal to pursue his federal claims there.

Having reviewed each of the factors and finding that only one supports a stay under *Colorado River*, this is clearly not one of those "exceptional circumstances" that warrants the Court's declining jurisdiction.

As neither *Colorado River* nor *Younger* compel the Court to stay this case, IT IS ORDERED that the Motion (Doc. 14) is DENIED.

DATED this 20th day of October, 2020.

_____
Dana L. Christensen, District Judge
United States District Court